IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

FORD MOTOR CREDIT COMPANY,
LLC,

    Appellant,

    v.                     CIVIL NO.: WDQ-10-1041

MAUREEN P. ROBERSON,

    Appellee.

MEMORANDUM OPINION

Ford Motor Credit Company, LLC appeals a bankruptcy court order denying its motion to stay the proceedings pending arbitration. For the following reasons, the order will be affirmed.

I. Background

In July 2004, Maureen Roberson financed her car through Ford Motor Credit Company, LLC ("Ford"). Appellee's Br. 7. A lien on the car secured the loan. *Id.* The loan agreement between Roberson and Ford included this arbitration clause:

> Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a "Claim") without filing a lawsuit in court. Either you or Creditor ("us" or "we") (each a "Party") may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration.

Def.'s Mot. to Stay, Ex. 1 at 2 (Paper No. 4-1).

The loan agreement also included an *ipso facto* clause that Roberson "will be in default if . . . [she] file[s] a bankruptcy petition." *Id.* Upon default, the agreement authorized Ford to repossess the car. *Id.*

On October 22, 2007, Roberson filed for Chapter 7 bankruptcy. Appellee's Br. 7. The car was scheduled as an asset, and the loan from Ford was scheduled as a secured debt. *Id.* On January 30, 2008, Roberson received a discharge. *Id.* Roberson made timely payments on the loan from Ford before and during the Chapter 7 proceedings. *Id.* In February 2008, Ford repossessed the car based on the *ipso facto* clause. *Id.* 6-7.

On February 21, 2008, Roberson filed a second bankruptcy petition, this time under Chapter 13. *Id.* 7. Roberson scheduled a potential claim against Ford as an asset on her Chapter 13 petition. *Id.* On July 14, 2008, Roberson filed an adversary proceeding against Ford, alleging it had: (1) violated the discharge injunction obtained in her first bankruptcy by repossessing her car, (2) violated the Fair Debt Collection Practices Act, (3) violated the Maryland Consumer Protection Act, (4) breached a contract between the parties, and (5) committed trespass and conversion. Amend. Compl. ¶¶ 25- 53.

Roberson's Chapter 13 plan has not been confirmed, and the Chapter 13 case has been stayed pending resolution of the adversary proceeding. Paper No. 4-40. Ford did not answer the

complaint in the adversary proceeding, instead filing a motion to dismiss. Paper No. 4-2. On September 15, 2008, Roberson responded to Ford's motion to dismiss. *Id.* On December 17, 2008, the bankruptcy court heard the motion, but did not decide it. *Id.*

On December 30, 2008, Roberson filed a motion for certification to the Maryland Court of Appeals as to whether the repossession of a car solely for breach of an *ipso facto* clause violated Maryland law, a question first impression. *Id.* Ford opposed the motion. *Id.* At the February 24, 2009 hearing, the bankruptcy court granted the motion to certify and directed the parties to file a statement of facts. *Id.*

On March 3, 2009, instead of filing a statement of facts, Ford filed a motion to stay the adversary proceedings pending arbitration. *Id.* On March 29, 2010, the bankruptcy court denied Ford's motion, finding that: (1) it was not required to submit the matter to arbitration because there was an inherent conflict between arbitration of Roberson's claims against Ford and the goals of the Bankruptcy Code, and (2) even absent a conflict, Ford had defaulted its right to arbitrate by delaying its demand. *Id.* Ford has appealed that decision. Paper No. 1.

II. Analysis

Ford contends that the bankruptcy court erred by denying its motion because there is no conflict between arbitration and

the goals of the Bankruptcy Code in this case, and its participation in the litigation was not a waiver of arbitration. Appellant's Br. 15-18. The Court reviews the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. *Duncan v. Duncan*, 448 F.3d 725, 728 (4th Cir. 2006).

A. Enforceability of the Arbitration Clause

The Federal Arbitration Act ("FAA") governs arbitration agreements. 9 U.S.C. §§ 1 *et seq.*; *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 342 (4th Cir. 2009). It reflects the strong federal policy favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Valid arbitration agreements must be enforced unless Congress intended to create an exception to the FAA for a particular claim. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 220 (1987).[1] Intent may derive from: (1) another statute, (2) its legislative history, or (3) an inherent conflict between arbitration and that statute's purposes. *Id*. at 227. The question whether the bankruptcy court had discretion to deny a motion to compel arbitration is reviewed *de novo*. *Am. Bankers Ins. Grp., Inc. v. Long,* 453 F.3d 623, 629 (4th Cir. 2006).

---

[1] The FAA provides that when the parties have a valid arbitration agreement, courts "shall . . . stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. "By its terms, the [FAA] leaves no place for the exercise of discretion by a . . . court, but instead mandates that . . . courts *shall* direct the parties to proceed to arbitration on issues to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985).

4

The Fourth Circuit relies on *McMahon's* inherent conflict prong.[2] *See In re White Mountain Mining Co.,* 403 F.3d 164,69-70 (4th Cir. 2005)("We need not decide today whether the statutory text itself demonstrates congressional intent to override arbitration for core claims.").

In *White Mountain*, the Fourth Circuit considered a bankruptcy court's denial of a motion to enforce arbitration of an adversary proceeding, brought against a Chapter 11 bankruptcy petitioner. *Id.* at 167. Affirming that denial, the court held that "in the bankruptcy setting, congressional intent to permit a bankruptcy court to enjoin arbitration is sufficiently clear to override . . . arbitration agreements." *Id.* The Fourth Circuit reasoned that:

---

[2] Courts applying the *McMahon* analysis in the bankruptcy context have reached varying conclusions. *See, e.g.,* Alan N. Resnick, *The Enforceability of Arbitration Clauses in Bankruptcy,* 15 Am. Bankr. Inst. L. Rev. 183, 185 (2007)("As a result of the numerous approaches and analyses adopted by the various federal courts of appeals, uncertainty and confusion have resulted with respect to the interplay between arbitration and bankruptcy and whether an arbitration clause should be enforced in a particular [bankruptcy] proceeding"). Some courts, relying on *McMahon's* first prong, have suggested that statutory text giving bankruptcy courts core-issue jurisdiction demonstrates congressional intent to decide core claims in bankruptcy courts, in exclusive preference to all other adjudicative bodies, including boards of arbitration. *See In re Caldor, Inc.,* 217 B.R. 121, 130 (Bankr. S.D.N.Y. 1998). In general, a claim is "core" if it "invokes a substantive right provided by [T]itle 11 or . . . by its nature, could arise only in the context of a bankruptcy case." *In re Gruntz,* 202 F.3d 1074, 1081 (9th Cir. 2000).

> The very purpose of bankruptcy is to modify the rights
> of debtors and creditors, and Congress intended to
> centralize disputes about a debtor's assets and legal
> obligations in the bankruptcy courts. Arbitration is
> inconsistent with centralized decision-making because
> permitting an arbitrator to decide a core issue would
> make debtor-creditor rights contingent upon an
> arbitrator's ruling rather than the ruling of the
> bankruptcy judge assigned to hear the debtor's case.
> Centralization of disputes concerning debtor's legal
> obligations is especially critical in [C]hapter 11
> cases, like White Mountain's.

*Id.* at 169-70(internal citations omitted).

However, the Fourth Circuit did not hold that arbitration of a core proceeding would always conflict with the bankruptcy code; nor did it hold that arbitration of non-core proceedings would never conflict.[3] Rather, it noted that a conflict between arbitration and the Bankruptcy Code was "revealed clearly *in this case*," suggesting that bankruptcy courts should consider the specific facts and nature of the claim for which arbitration is sought.[4] This reasoning accords with other courts.[5]

---

[3] Although the Fourth Circuit expressly declined to decide whether Congress intended to preclude arbitration of all proceedings defined as core in the Bankruptcy Code, some courts have adopted that construction. *See, e.g., In re Blanchard Transp. Serv's, Inc.*, 2008 WL 619379, at * 1 (Bankr. E.D.N.C. 2008)("The determination of whether or not an arbitration clause can be enforced depends on whether the proceeding is a "core proceeding" as defined by 28 U.S.C. § 157(b)) (citing *In re White Mountain*, 403 F.3d at 168-170).

[4] *In re White Mountain,* 403 F.3d at 170 (emphasis added). *See also In re Cooley,* 362 B.R. 514, 520(Bankr. N.D. Ala. Feb. 14, 2007) (*In re White Mountain* "determined bankruptcy courts have the discretion to refuse to enforce arbitration agreements entered into pre-petition by debtors only if, after analyzing the law and circumstances of each particular proceeding, the

6

In *White Mountain*, protection from "piecemeal litigation" was necessary to ensure efficient reorganization and effectuate the "fundamental purpose of [C]hapter 11," which is "rehabilitation of the debtor [to] prevent[] it from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources." *Id.* Resolution of the issue in the adversary proceeding "was critical to the debtor's ability to formulate a plan of reorganization" and could be decided on an expedited basis by the bankruptcy court. *Id.*[6] An arbitration proceeding would have "substantially interfere[d]" with reorganization by: (1) making it difficult for the debtor to attract additional funding, (2) undermining creditor confidence, and (3) imposing additional costs on the debtor's estate. *Id.*

---

court finds a conflict between the underlying purposes of the Bankruptcy Code and resolving the proceeding by arbitration").

[5] *See In re Nat'l Gypsum,* 118 F.3d 1056, 1067 (5th Cir. 1997) (the "core/non-core distinction conflates the inquiry set forth in *McMahon* . . . with the mere identification of the jurisdictional basis of the particular bankruptcy proceeding. . . . Certainly not all core bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the [FAA]"); *In re Rarities Grp., Inc.,* 434 B.R. 1, 10 (D. Mass. 2010)("It may be more difficult to find an inherent conflict with the Bankruptcy Code for non-core claims . . . but it is nevertheless an inquiry that must be made.")(citing *MBNA Am Bank, N.A. v. Hill,* 436 F.3d 104, 108 (2d Cir. 2006).

[6] The adversary proceeding was brought by a creditor, seeking repayment of $10 million. A central issue in the proceeding was whether the money was an equity investment, or a loan to be repaid. *In re White Mountain,* 403 F.3d at 166-67.

Here, the bankruptcy court determined that, as *In re White Mountain*, "the centralization of disputes is not insignificant," and a key issue in Roberson's Chapter 13 petition was whether she could effectuate successful reorganization if her car and any damages were restored to her.[7] *Roberson v. Ford Motor Credit Company, LLC (In re Roberson),* No. 08-0557 NVA, at 10 (Bankr. D. Md. Mar. 29, 2010).

Chapter 13 allows debtors to adjust their financial circumstances by paying pre-petition debt consistent with their available resources. *See In re Bratton,* 248 F.3d 1156, 1156 (7th Cir. 2000)(*citing* H.R. Rep. No. 950595, 95th Cong., 1st Sess. 118 (1977)). The determination of those resources is an integral part of formulating a Chapter 13 plan.[8]

---

[7] Other courts, relying on *In re White Mountain*, have addressed whether a motion to arbitrate a Chapter 13 adversary proceeding may be denied. They have reached varying results on similar facts. *Compare In re Brown,* 354 B.R. 591, 603 (D.R.I. 2006)(court had discretion to deny creditor's demand to arbitrate debtor's Truth in Lending Act claim because "the outcome of the action would clearly affect [the debtor's] Chapter 13 plan and the distribution her creditors would receive.") *with In re Cooley,* 362 B.R. at 522 (court lacked discretion to deny arbitration of debtor's Truth In Lending Act claim against creditor, because potential recovery on the claim would not have "material impact" on Chapter 13 case, but would only "hasten the pay-out of [debtor's] Chapter 13 plan, reduce her monthly payments, or possibly increase the amount distributed to other creditors" and "these same results would occur whether the recovery [was] awarded by [the bankruptcy court] or an arbitrator.").

[8] *C.f. In re Blanchard,* 2008 WL 619379, at * 2 (denying creditor's arbitration demand for debtor-initiated claim for funds because the funds were "a significant portion of the

Roberson's Chapter 13 plan has not been confirmed. The outcome of her adversary proceeding against Ford will affect her resources to pay her debts; until the adversary proceeding is resolved, it is uncertain if the car and damages from its repossession will be available to her. Arbitration of the claims against Ford would "substantially interfere with [Roberson's] efforts to reorganize" efficiently. *In re White Mountain,* 403 F.3d at 170.[9] The bankruptcy court correctly refused to compel arbitration.

B. Default of Right to Arbitrate

The bankruptcy court also determined that, had arbitration been required, Ford had defaulted on its right to demand arbitration. Under the FAA, a party to an otherwise enforceable arbitration agreement loses its right to demand arbitration and stay court proceedings if it is "in default in proceeding with such arbitration." 9 U.S.C. § 3. "[D]ue to the strong federal policy favoring arbitration, courts have limited the circumstances that can result in statutory default." *Forrester,* 553 F.3d at 342.

---

debtor's revenue," and thus, were "an integral part" of the debtor's plan to reorganize under Chapter 11).

[9] *See also MBNA Am. Bank, N.A. v. Hill,* 436 F.3d 104, (2d Cir. 2006)(court lacked discretion to refuse arbitration when bankruptcy case was closed, debtor had been discharged, and debtor's claim against creditor "therefore [could not] affect an ongoing organization").

Ford contends that its participation in the adversary proceeding before the bankruptcy court was not a default. Default does not occur merely because the moving party has failed to assert arbitration as an affirmative defense, participated in the litigation, or otherwise delayed asserting its right. *Id.* at 343. Default occurs when the moving party "so substantially utilizes the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Microstrategy, Inc. v. Lauricia,* 268 F.3d 244, 250 (4th Cir. 2001)(internal citations omitted). Actual prejudice to the opposing party is required. *Id.*

Actual prejudice is "outcome-oriented." *Delta-T Corp. v. Pac. Ethanol, Inc.,* 2010 WL 1816402, at * 3 (E.D. Va. May 5, 2010). It does not exist simply because the opposing party expended resources before a delayed arbitration demand.[10] There is prejudice when (1) the opposing party expended significant time and money responding to motions *filed by the moving party*,[11]

---

[10] *Sedelnikova v. Cheesecake Factory Rest.,* 2010 WL 2367387, at *7 (D. Md. June 7, 2010)(expending resources to draft interrogatories and document requests and to review documents in preparation for deposition before delayed arbitration demand did not show actual prejudice); *Moye v. Duke Univ. Health Sys., Inc.,* 2007 WL 1652542, at *9 (M.D.N.C. June 5, 2007)(delay of more than a year is significant, but does not establish actual prejudice).

[11] *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.,* 380 F.3d 200, 206 (4th Cir. 2004)("We are unwilling to include activity that the moving party did not initiate in assessing that party's default.").

or (2) the opposing party engaged in discovery not available in arbitration or revealed trial strategy to the moving party.[12]

The bankruptcy court determined that had Ford defaulted on its right to arbitrate because it did not seek arbitration until eight months after Roberson instituted the adversary proceeding and after Ford had "received . . . an adverse ruling . . . that [the court] would certify particular questions to the Maryland Court of Appeals." *In re Roberson,* No. 08-12415 NVA, at 12-13. The court also found that Roberson was "prejudiced by having to litigate pre-trial motions" and "expend[] substantial energies and resources." *Id.* at 13. The question whether a party has defaulted on its arbitration right is a legal one, reviewed *de novo. Forrester,* 553 F.3d at 342 (but deference is given to underlying factual findings).

Between Roberson's initiation of the adversary proceeding and Ford's motion to stay, Ford filed only a motion to dismiss. Paper No. 4-2. Roberson initiated all other motions. *Id.* This would be insufficient to show actual prejudice. *See Sedelnikova,* 2010 WL 2367387, at *7.

---

[12] *See Forrester,* 553 F.3d at 343-44 (18 month delay provided party seeking arbitration with strategic advantage, causing actual prejudice, because opponent was (1) required to respond to numerous pre-trial motions, (2) engage in significant discovery, and (3) reveal trial strategy before demand was made); *Delta-T Corp. v. Pac. Ethanol, Inc.,* 2010 WL 1816402, at * 3 (E.D. Va. May 5, 2010)(prejudice may exist when the moving party has received discovery not available in arbitration or when evidence has been lost by delay).

Because Ford delayed asserting its arbitration right, Roberson's motion to certify the question whether *ipso facto* repossession is unlawful under Maryland law was granted. That question is not answered "by a controlling appellate decision, constitutional provision, or statute." Md. Courts & Judicial Proceedings Code Ann. § 602. Ford now seeks arbitration before Roberson obtains a Maryland Court of Appeals ruling which could resolve a weakness in her claims against Ford. Actual prejudice would result if arbitration were compelled. *Delta-T Corp.,* 2010 WL 1816402, at * 3 (actual prejudice is that which affects the outcome of an opponent's case).

The bankruptcy court correctly determined that Ford had defaulted on its arbitration right.

III. Conclusion

For the reasons stated above, the bankruptcy court order will be affirmed.

October 28, 2010            /s/
Date                        William D. Quarles, Jr.
                            United States District Judge

12